JOSEPHINE COUNTY OFFICIAL RECORDS
GEORGETTE BROWN, COUNTY CLERK
2006-006558
$60.00
00141067200600065580090092
03/29/2006 03:06:44 PM
MTG-TRD Cnt=1 Stn=4 RECEIPTS
$45.00 $11.00 $4.00




After Recording Return To:
FHHLC-Post Closing Mail Room
1555 W. Walnut Hill Ln #200 MC 6712
Irving, TX 75038
Loan Number: 0052773397

(Space Above this Line for Recording Data)

LOAN MODIFICATION AGREEMENT
(Providing for 6 month LIBOR Adjustable Rate Interest Only)

This Loan Modification Agreement ("Agreement"), made this 24th day of MARCH , 2006 , between MIKE A RICHARDSON & TAMIE S RICHARDSON ("Borrower") and FIRST HORIZON HOME LOAN CORPORATION ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("The Security Instrument"), dated 4/08/2005 and recorded in 2005-008429 , of the Land / Official Records of Josephine County, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

746 BAILEY DRIVE, GRANTS PASS, Oregon 97527
*(Property Address)*

The real property described being set forth as follows:
PARCEL 1 OF PARTITION PLAT NO. 2004-086, IN JOSEPHINE COUNTY, OREGON.

Initials ______

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. As of 3/30/2006, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S.$ 370,000.00. Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of the Lender the sum of U.S. $ 370,000.00 (the "Principal Balance"), consisting of the amount(s) loaned to Borrower by Lender and any interest capitalized to date.

2. Borrower promises to pay the Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Principal Balance at the yearly rate of 6.125 %, from 3/30/2006. The interest rate Borrower will pay will change in accordance with Paragraphs 7 and 8 of this Agreement. The interest rate required by this Paragraph 2 and Paragraphs 7 and 8 of this Agreement is the rate Borrower will pay both before and after any default under the terms of the Note, as amended by this Agreement.

3. Borrower promises to make initial monthly payments of U.S. $ 1,888.54, beginning on 5/01/2006, until the first principal and interest payment due date on 5/01/2016, and thereafter will make monthly payments in an amount sufficient to repay the principal and interest at the rate determined as described in Paragraphs 7 and 8 of this Agreement. If on 4/01/2036, ("Modified Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower will make such payments at PO BOX 809, MEMPHIS, TN 38101 or at such other place as Lender may require.

4. The first principal and interest payment will be due on the first day of MAY, 2016. The interest rate Borrower will pay may change on the first day of APRIL, 2011, and on that day every six (6) months thereafter. Changes in the monthly payment will reflect changes in the unpaid principal of the loan and in the interest rate Borrower must pay. Lender will determine the new interest rate and the changed amount of the monthly payment in accordance with Paragraphs 7 and 8 of this Agreement. Each date on which the interest rate could change is called a "Change Date".

5. Beginning with the first change Date, the interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index." If the Index is no longer available, Lender will choose a new index which is based upon comparable information. Lender will give Borrower notice of this choice.

6. Seller assigns and transfers to Borrower both the casualty insurance policy on the Property and all funds on deposit for payment of taxes, homeowner association dues, insurance premiums and any applicable refunds.

7. Before each change date, Lender will calculate the new interest rate by adding 2.250 % to the Current Index. Lender will then round the result of this addition to the nearest one-eighth of

Initials

one percentage point (0.125%). Subject to the limits stated below, in Paragraph 8 of this Agreement, this rounded amount will be the new interest rate until the next Change Date. Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that Borrower is expected to owe at the change Date in full on the maturity date at the new interest rate in substantially equal payments. The result of this calculation will be the new amount of the monthly payment. Borrower will pay the amount of the new monthly payment beginning on the first monthly payment date after the change date until the amount of the monthly payment changes again. The monthly payments will be applied first to the payment of interest due and then to principal.

8. The interest rate Borrower is required to pay at the first Change date will not be greater than 12.125 % or less than 2.250 %. Thereafter, the interest rate will never be increased or decreased on any single change date by more than 2.00 % from the rate of interest Borrower has been paying for the preceding six (6) months. The interest rate will never be greater than 12.125 %.

9. Before the effective date of any change, lender will deliver or mail to Borrower a notice of any changes in the interest rate and the amount of the monthly payment. The notice will include information required by law to be given to Borrower and the title and telephone number of a person who will answer any questions Borrower may have. Unless applicable law requires a different method, any notice that must be given to Borrower under this agreement will be given by delivering it or mailing it by first class mail to Borrower at the Property address stated above or at a different address if Borrower gives Lender a notice of Borrower's different address. Any notice that must be given to Lender at the address stated in Paragraph 3 above or at a different address if Borrower is given a notice of that different address.

10. If Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the due date, Borrower will pay a late charge to Lender. The amount of the charge will be % of the overdue payment of principal and interest. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy, and will not be charged if such charge would constitute interest in the excess of the maximum permitted by state law.

11. Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When Borrower makes a prepayment, Borrower will notify the Lender in writing that Borrower is doing so.

12. The lien and security interest secured by this Agreement is a "Renewal and Extension" effective as of 3/24/2006 . It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended until the Indebtedness evidenced by the Note, as renewed, modified, and extended hereby, has been fully paid. Lender and Borrower acknowledge and agree that such extension, renewal, amendment, modification or rearrangement shall in no manner affect or impair the Note or the liens and security interests securing same, the purpose of this Agreement being simply to extend, modify, amend or rearrange the time and the manner of payment of the Note and the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note (including if applicable any and all vendor's liens securing the Note), which are expressly

Initials KSR MR

0052773397

acknowledged by the Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note. The Borrower hereby expressly waives the benefit of any and all statutes of limitation which might otherwise inure to Borrower's benefit, or be in any way applicable to Borrower's obligations under the terms of any and all instruments described herein.

13. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

14. Borrower also will comply with all other covenants, agreements and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items. impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) all terms and provisions of any adjustable rate rider, or other instrument or documents that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

15. No provisions of this Agreement or the Note or any instrument evidencing or securing the Note, or otherwise relating to the indebtedness evidenced by the Note, shall require the payment of permit the demand, collection, application or receipt of interest in excess of the maximum permitted by applicable state or federal law. If any excess of interest in such respect is herein or in any such other instrument provided for, or shall be adjudicated to be so provided for herein or in any such instrument, the provisions of this paragraph shall govern, and neither Borrower nor any endorser or guarantor of the Note nor their respective heirs, personal representatives, successors or assigns shall be obligated to pay the amount of such interest to the extent it is in excess of the amount permitted by applicable law. It is expressly stipulated and agreed to be the intent of Borrower and Lender to at all times comply with the usury and other laws relating to the Note and the Security Instrument and any subsequent revisions, repeals or judicial interpretations hereof, to the extent applicable thereto. In the event Lender ever receives, collects or applies as interest any such excess, including but not limited to any "late charges" collected, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance of the Note, and, of upon such application the principal balance of the Note is paid in full, any remaining excess shall be forthwith paid to Borrower and the provisions of the Note and the Security Instrument shall immediately be deemed reformed and the amounts thereafter collectible there under reduced, without the necessity of execution of any new

Initials SB / [signature]

document, so as to comply with the then applicable law, but so as to permit the recovery of the fullest amount otherwise called for there under. In determining whether or not the interest paid or payable under any specific contingency exceeds the maximum interest allowed to be charged by applicable law, Borrower and Lender shall, to the maximum extent permitted under applicable law, amortize, prorate, allocate and spread the total amount of interest throughout the entire term of the Note so that the amount or rate of interest charged for any and all periods of time during the term of the Note is to the greatest extent possible less than the maximum amount or rate of interest allowed to be charged by law during the relevant period of time.

16. In consideration of the modification of certain provisions of the Note and Security Instrument, all as herein provided, and the other benefits received by Borrower hereunder, Borrower hereby RELEASES, RELINQUISHES, and forever DISCHARGES lender, as well as its predecessors, successors, assigns, agents, officers, directors, employees and representatives, of and from any and all claims, demands, actions and causes of action of any and every kind of character, whether known or unknown, present or future, which Borrower may have against Lender, and its predecessors, successors, assigns, agents, officers, directors, employees and representatives, arising out of or with respect to any and all transactions relating to the Note and Security Instrument occurring prior to the date hereof, including any loss, cost or damage, of any kind or character, arising out of or in any way connected with or in any way resulting from the acts, actions or omissions of lender, and its predecessors, successors, assigns, agents, officers, directors, employees, and representatives, including any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortuous interference with contractual relations, tortuous interference with corporate governance or prospective business advantage, breach of contract, deceptive trade practices, libel, slander, conspiracy or any claim for wrongfully accelerating the Note or wrongfully attempting to foreclose on any collateral relating to the Note, but in each case only to the extent permitted by the applicable law, of this state.

17. As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and Borrower acknowledges and reaffirms Borrower's liability to Lender there under. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instruments, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement. Any default by Borrower in the Security Instrument, shall allow Lender to exercise all of its remedies set forth in said security Instrument.

18. In the event any portion of the sums intended to be secured by this Agreement cannot be lawfully secured, payments in reduction of such sums shall be applied first to those portions not secured.

19. Any Co-signer who signs this Agreement but has not executed the Note is co-signing this Agreement only to mortgage, grant and convey that Co-signer's interest in the Property under the terms of this Agreement. Co-signer is not personally obligated to pay the sums secured by the Security Instrument, and agrees that Lender and Borrower may agree to extend, modify,

Initials SR / MR

forbear or make any accommodations with regard to the terms of the Note or the Security Instrument, without Co-signer's consent.

20. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance of environmental Law of which Borrower has actual knowledge. If borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the Paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. Borrower hereby agrees to pay all costs and expenses incurred by Lender in connection with the execution and administration of this Agreement, the renewal and extension and modification of the Note and Security Instrument, and any other documents executed in connection herewith. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement.

22. No Oral Agreements: THE WRITTEN LOAN AGREEMENTS REPRESENT THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Initials ____

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
FIRST HORIZON HOME LOAN CORPORATION

By: ________________

Its: Vice President

________________
Borrower MIKE A RICHARDSON

________________
Borrower TAMIE S RICHARDSON

________________
Borrower

________________
Borrower

State of OREGON :
County of JOSEPHINE :

Before me, a Notary Public on this day personally appeared
MIKE A RICHARDSON & TAMIE S RICHARDSON

known to me (or proved to me) on the oath of ________________, through ________________ (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledgement to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of this office this 29 day of March, 2006

________________
Notary Public

(Seal) OFFICIAL SEAL HEIDI PROVOST NOTARY PUBLIC - OREGON COMMISSION NO. 383674 MY COMMISSION EXPIRES AUG. 30, 2008

Corporate Acknowledgement

Before me, the undersigned authority, on this day appeared
A ________________ of ________________ subscribed to the foregoing instrument, and acknowledged to me that ________________ executed the same for the purposes and consideration therein expressed as the act and deed of said corporation and in the capacity therein stated.

Given under my hand and seal of this office this ________ day of ________________, 20___

________________
Notary Public

(Seal)
0052773397

8

# CORPORATE ACKNOWLEDGEMENT

State of Oregon )
)
County of Clackamas )

The foregoing instrument was acknowledged before me on March 24, 2006 *[date]*, by Darci B. Hall, Vice President of First Horizon Home Loan Corporation, a Kansas Corporation, on behalf of the Corporation.




(Seal)

Notary Public, State of OREGON

My Commission Expires: October 6,2007

(9)

# INTEREST-ONLY ADDENDUM
## TO LOAN MODIFICATION AGREEMENT
## (PROVIDING FOR ADJUSTABLE RATE)

LOAN NUMBER: 0052773397

PROPERTY ADDRESS: 746 BAILEY DRIVE, GRANTS PASS, Oregon 97527

THIS ADDENDUM is made this 24th day of March, 2006, and is incorporated into and intended to form a part of the Loan Modification Agreement dated the same date as this Addendum executed by the undersigned and payable to First Horizon Home Loan Corporation, (the "Lender").

THIS ADDENDUM supersedes Section 7 of the Loan Modification Agreement. None of the other provisions of the Loan Modification Agreement are changed by this Addendum.

7. INTEREST RATE AND MONTHLY PAYMENT CHANGES
Calculation of Changes

Before each Change Date, the Lender will calculate my new interest rate by adding TWO AND ONE-QUARTER percentage point(s) ( 2.250) to the Current Index. The Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Paragraph 8, this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Lender will determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of the monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Lender agrees in writing to those changes. However if the partial Prepayment is made during the Interest-Only Period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. At the end of the Interest-Only Period and on each Change Date thereafter, the Lender will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

Dated: 3-29-06

[signature]
Borrower MIKE A RICHARDSON

[signature]
Borrower TAMIE S RICHARDSON

Borrower

Borrower



60